IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JESSICA LEIGH WALKER                                        PLAINTIFF

V.                                                   CAUSE NO.: 1:12-CV-74-SA-DAS

WAL-MART STORES, INC.                                     DEFENDANT

MEMORANDUM OPINION

Presently before the Court is Defendant's Motion for Summary Judgment [35]. For the reasons set forth below, that motion is granted in part and denied in part.

FACTUAL BACKGROUND

Plaintiff Jessica Leigh Walker began her employment with Wal-Mart as a sales associate in 2000. In January 2008, Plaintiff began training for an assistant manager position at the Starkville, Mississippi Wal-Mart location. She was subsequently appointed to that assistant manager position by market human resources manager Pam Barnett. During the first couple of years of her employment as an assistant manager, Walker's superiors considered her performance to be at least satisfactory.

In August 2009, Plaintiff requested personal leave in order to get married. According to store manager Brett King, Walker failed to provide him with sufficient notice that she would need the time off. King subsequently informed Walker that since August was the busiest time of the year for the store, and he had previously not allowed other employees leave during the month, he could not approve her request for that time frame. He did, however, allow her the opportunity to have it specifically approved by Barnett. According to King, as long as Barnett

first gave her approval, he would not prevent her from taking the time off. Barnett indeed approved the request and Walker was allowed the time away from work.

In approximately November or December of 2009, Walker approached King and informed him that she was pregnant. According to Walker, King "was like (makes sound), I told you not to do this. And then he was telling me that he was going to have to get rid of me." When asked whether she recalled anything else from the conversation, Walker stated, "He also made the comment about—in August I got married—when I first came, he had to let me off in August." She additionally stated, "And then he said in the next year I had to be off for my anniversary in August. He was…He was talking about the time that I was taking off in August, and he was saying that August is a busy time frame."

Nonetheless, Walker's Family Medical Leave Act request was eventually approved and she gave birth to her child August 17, 2010. She took leave from August 13, 2010 until November 5, 2010, exhausting her twelve weeks of annual FMLA leave. Walker's child was born with hydrocephalus, and thus required significant medical care. Once back at work, Walker informed King that her child had been born with a hydrocephalus and explained that the baby would require significant hands-on care. Soon after Walker's arrival back at Wal-Mart, her child was hospitalized and Walker immediately requested additional leave in order to accompany her at the hospital. That request, however, was denied by the local store on grounds that Walker had already exhausted her annual allotment of FMLA leave. Walker then sought relief from the regional manager, Sammy Sappington, who approved her request and allowed her the additional time.

Walker returned to work for a short period afterward, but once again required leave in December. She requested additional FMLA leave on December 19, 2010, but that request was denied. She nonetheless took unprotected leave in order to be with her child. On December 24, 2010, King informed Walker that she had lost her assistant manager position, but would be able to take thirty days of personal leave to locate and apply for an alternative job within the company. She indeed did so and was placed in a part-time receiving position in the Columbus, Mississippi Wal-Mart. She has since been placed in various associate positions within the company, but has maintained her employment with Wal-Mart.

According to Walker, "the only reason [she] lost her management position, and was repeatedly demoted to various low-level jobs, was her pregnancy and delivery of a disabled baby." Walker filed the present action in this Court, alleging discrimination under Title VII, the Pregnancy Discrimination Act, and the Americans with Disabilities Act. Defendant seeks summary judgment as to all of Plaintiff's claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## DISCUSSION

A.  Americans with Disabilities Act

Under the ADA, employers are prohibited from taking an adverse employment action "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). "For instance, an employer cannot make an adverse employment decision based on the 'belie[f] that the [employee] would have to miss work' in order to care for a disabled person.'" Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 760 (5th Cir. 1996) (citing comment, 29 C.R.R. § 1630). A plaintiff may establish an

4

ADA claim through direct or circumstantial evidence. Daigle v. Liberty Life Ins. Co., 70 F. 3d 394, 396 (5th Cir. 1995). While the Fifth Circuit has not specifically articulated a burden-shifting framework for relationship claims based on circumstantial evidence, district courts within the Circuit have adopted the four-part prima facie test set forth by the Tenth Circuit. See, e.g., Collins v. Sailormen Inc., 512 F. Supp. 2d 502, 508 (W.D. Tex. 2007); Spinks v. Trugreen Landcare, LLC, 322 F. Supp. 2d 784, 795 (S.D. Tex. 2004); EEOC v. DynMcDermott Petro. Op. Co., 2012 WL 506861, * 4 (E.D. Tex. Feb. 15, 2012).

Under that analysis, the plaintiff must show that (1) she was "qualified for her job at the time of the adverse employment action; (2) she was subjected to an adverse employment action; (3) she was known by her employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1085 (10th Cir. 1997). If the plaintiff meets such a burden, the court should apply the remainder of the McDonnell Douglas burden-shifting framework. Id.

In the case at hand, the parties dispute only the fourth element. Plaintiff contends in conclusory fashion that "the adverse employment actions occurred, indisputably, because of Walker [sic] disabled child and the child's hospitalization." She points to no specific evidence in the record supporting a causal inference, but instead merely argues that "[n]o witness claims that Walker lost her job for any reason other than the fact that she took time off work because of her child's disability." The Court, in conducting its own analysis, finds that the temporal proximity between King learning that Walker's daughter had hydrocephalus and Walker's subsequent

5

demotion is the only factual contention that might support a discriminatory inference. Viewing the facts in a light most favorable to the Plaintiff, King learned that Plaintiff's daughter had a medical disability shortly after her return back to work on November 5, 2010. According to Walker, she described her daughter's condition to King and explained that she would require significant medical care. It was not until approximately December 24, 2010, however, that Walker lost her position as assistant manager and was forced to apply for a lesser position. Therefore, there was more than a month-long period between King learning about the child's disability and Plaintiff's proposed adverse employment action.

In Spinks, the district court was presented with a somewhat analogous factual scenario. 322 F. Supp. 2d at 795. There, the plaintiff was terminated approximately three weeks after asking her superiors for leave to be able to attend to the needs of a close relative. Id. The court, however, found that since the employer granted the time off and the employer had not made any comments regarding the disabled family-member, the plaintiff had failed to show that the employment action occurred under circumstances that would raise a reasonable inference that the disability was a determining factor in the employer's decision. Id. at 796. On the other hand, in Sailormen, another district court found that a month-long temporal gap between an employee taking leave to care for a disabled relative and the adverse employment action was sufficient to support a prima facie case of discrimination when the employer had also remarked on some of the negative consequences caused by the relative's disability. 512 F. Supp. 2d at 509.

In the case at hand, this Court is extremely dubious about Plaintiff's prima facie showing. Plaintiff has failed to specifically point to any evidence in the record supporting a causal connection. Contrary to Plaintiff's contention that no witness claims that she lost her position for

6

"any reason other than the fact that she took time off work because of her child's disability," witnesses consistently testified that she was removed from her position because she had already exhausted her FMLA leave, yet continued to require time away from work. They stated that she was removed from her position due to the fact that she had taken unprotected leave, and not that she was removed because she needed unprotected leave to care for a child with a disability. It was, after all, not until Plaintiff's second unprotected leave from work that she was removed from her position. Additionally, in Young v. Cooper Lighting, Inc., the court articulated that "if an employee's termination is not based on any assumption regarding future absences related to their relative's care but is instead the result of a record of past absences and/ or clear indication that additional time off will be needed in the future, no ADA violation has occurred." 2008 WL 4491396, *2 (S.D. Miss. Oct. 1, 2008) (quoting Reddinger v. Hosp. Centr. Serv's, Inc., 4 F. Supp.2d 405, 405 (E.D. Pa. 1998)).

Even if Plaintiff could establish a prima facie case, however, her claim would still fail. If the plaintiff is able to establish a prima facie showing of intentional discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). If the employer satisfies that burden, the plaintiff must then show either that (1) the employer's reason is pretext, or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the employee's protected status. Id. Here, Defendant offers as a legitimate, non-discriminatory reason for Plaintiff's transfer the fact that she had taken leave beyond her allotment of twelve protected weeks. Defendant has further offered evidence that nine other assistant managers had been similarly demoted by Barnett after exhausting more than

7

their twelve protected weeks of leave. Plaintiff has failed to rebut Wal-Mart's proffered legitimate, non-discriminatory reason for her removal and summary judgment is therefore due as to Walker's ADA claim.

B. Pregnancy Discrimination Act

Additionally, however, Walker also contends that her removal from the assistant manager position violated the Pregnancy Discrimination Act. Title VII of the 1964 Civil Rights Act "prohibits various forms of employment discrimination, including discrimination of the basis of sex." Urbano v. Continental Airlines, Inc., 138 F.3d 204, 205-206 (5th Cir. 1998) (quoting California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 276-77, 107 S. Ct. 683, 93 L. Ed. 2d 613 (1987)). Congress subsequently amended the definitional section of Title VII to clarify that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis pregnancy, childbirth, or related medical conditions…" 42 U.S.C. § 2000e(k) (1994). Not surprisingly, PDA claims are therefore generally analyzed like other Title VII sex discrimination claims. Urbano, 138 F.3d at 206.

To establish a prima facie case of pregnancy discrimination under Title VII, a plaintiff may prove her claim either through the production of direct evidence or by relying on the McDonnell-Douglas burden-shifting formula. Urbano, 138 F.3d at 206. If the plaintiff relies on circumstantial evidence, she must show: (1) she was a member of the protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that she was replaced with a similarly qualified person who was not a member of the protected class or that similarly situated employees were treated more favorably. See Laxton, 333 F.3d at 579 n. 1; Grimes v. Wal-Mart Stores Texas, LLC, 505 F. App'x 376, 379 (5th Cir. 2013); McLaughlin

v. W & T Offshore, Inc., 78 F. App'x 334, 338 (5th Cir. 2003). If the plaintiff is able to successfully establish a prima facie showing of intentional discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). If the employer satisfies that burden, the plaintiff must then show either that (1) the employer's reason is actually a pretext for discrimination, or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the employee's protected status. Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007).

Here, Plaintiff first contends that she has direct evidence supporting her discrimination claim. Specifically, she cites a conversation she had with King regarding her pregnancy. In approximately November or December of 2009, she approached King and informed him that she was pregnant. According to Walker, King "was like (makes sound), I told you not to do this. And then he was telling me that he was going to have to get rid of me." When asked whether she recalled anything else from the conversation, Walker stated, "He also made the comment about—in August I got married—when I first came, he had to let me off in August." She additionally stated, "And then he said in the next year I had to be off for my anniversary in August. He was…He was talking about the time that I was taking off in August, and he was saying that August is a busy time frame."

In order to constitute direct evidence, the evidence must prove intentional discrimination without inference or presumption when believed by the trier of fact. Jones v. Overnite Trans. Co., 212 F. App'x. 268, 272 (5th Cir. 2006) (citing Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002)). It includes "statements or documents which show on [their] face that

9

an improper criterion served as a basis . . . for the adverse employment action." Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 415 (5th Cir. 2003). Those statements, however, must be direct and unambiguous. Read v. BT Alex Brown Inc., 72 F. App'x 112, 119 (5th Cir. 2003).

Where a plaintiff offers verbal remarks as direct evidence, the court must apply the four part test found in CSC Logic to determine whether they are sufficient to overcome summary judgment. Reed v. Neopost USA, Inc., 701 F.3d 434, 441 (5th Cir. 2012). Verbal remarks may constitute direct evidence if they are 1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996); Patel v. Midland Mem. Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir. 2002) (quoting Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222-23 (5th Cir. 2001)); see also Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 401 (5th Cir. 2000), cert. denied, 532 U.S. 937, 121 S. Ct. 1393, 149 L. Ed. 2d 316 (2001). If the comments fail to meet these criteria, e.g., if they are vague and remote in time, or the speaker has no authority or influence over the employment decisions, they are merely "stray remarks." See, e.g., Krystek v. Univ. of So. Miss., 164 F.3d 251, 256 (5th Cir. 1999); see also Brauninger v. Motes, 260 F. App'x 634, 640 (5th Cir. 2007) (noting that to be evidence of animus, a remark must be related to and proximate to a specific employment decision and the remark must be "direct and unambiguous.").

Defendant in the present case attacks Plaintiff's characterization of the alleged comment as direct evidence, arguing that King did not have authority over Plaintiff's removal from the position of assistant manager and that the comment was simply too remote to constitute direct

evidence. The Court reaches only the second contention. Generally, comments made one year prior to an adverse employment action are too remote to constitute direct evidence of discrimination. See Auguster v. Vermilion Parish School Bd., 249 F.3d 400, 405 (5th Cir. 2001) (discounting comments made nearly a year prior to non-renewal decision); Guthrie v. Tifco Insdus., 941 F. 2d 374, 379 (5th Cir. 1991) (finding a comment to be remote in time when made one year before decision); Acker v. Deboer, 429 F. Supp. 2d 828, 839 (N.D. Tex. 2006) (holding that comments made over a year before termination were "certainly not 'proximate in time'"). In Guthrie, for instance, the plaintiff attempted to support his ADEA claim with several age-related comments purportedly made by his employer. 941 F. 2d at 379. According to the plaintiff, the employee's superior had stated that he needed "to surround himself with people his age" approximately one year prior to the adverse employment action. Id. at 378, 379. The Fifth Circuit, however, found the statement failed to constitute direct evidence because it was too vague and too remote in time. Id.

The Court finds that Plaintiff's proffered statements here are simply too remote to constitute direct evidence under the CSC Logic test. Although Plaintiff's response fails to specifically articulate when the alleged conversation with King specifically occurred, her interrogatory response represents that it occurred at some point in December 2009, and her deposition testimony reflects that it occurred in November or December of 2009. Given the fact that she was not removed from her assistant manager position until December 24, 2010, the conversation must necessarily have occurred at least one year prior. The Court therefore finds that the alleged statement fails to constitute direct evidence of discrimination and Walker must rely on the McDonnell-Douglas formula to establish a prima facie case of discrimination.

As previously articulated, then, Walker must show: (1) she was a member of the protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that she was replaced with a similarly qualified person who was not a member of the protected class or that similarly situated employees were treated more favorably. See Laxton, 333 F.3d at 579, n. 1; Grimes, 505 F. App'x at 379. Although Defendant only attacks Plaintiff's prima facie case in detail as to the fourth prong, Defendant argues in a footnote that Plaintiff cannot establish a PDA claim because she was not pregnant when she suffered an adverse employment action.

The Court analyzes that argument under the first prong, that is, whether Walker was a member of the protected class.[1] For purposes of a prima facie case of pregnancy discrimination, "the protected class is pregnant women, not all women." Milles v. Dell, Inc., 429 F.3d 480, 490 (4th Cir. 2005); accord Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1060 (5th Cir. 1998) (quoting EEOC v. Ackerman, Hood & McQueen, Inc., 956 F.2d 944, 948 (10th Cir. 1992)). Unlike other protected traits, however, pregnancy is somewhat divergent on grounds that "it is not immutable," and at some point, "the female employee is no longer 'affected by pregnancy, childbirth, or related conditions.'" Solomen v. Redwood Advisory Co., 183 F. Supp. 2d 748, 753 (E.D. Pa. 2002) (citing 42 U.S.C. § 2000e(k)). Nonetheless, "[t]here are circumstances under which a pregnancy discrimination claim might be based on an adverse employment action taken against a woman who is not currently pregnant; for example, the PDA protects women from discrimination based on their capacity to become pregnant." Griffin v. Sisters of St. Francis, Inc., 489 F.3d 838, 844 (7th Cir. 2007); Briggs v. Women in Need, Inc., 819 F. Supp. 2d

---

[1] The parties failed to cite any Fifth Circuit precedent specifically considering whether a plaintiff who was no longer pregnant at the time of the adverse employment action could nonetheless be considered a member of the protected class, and the Court's own search has not revealed any.

119, 127 (E.D.N.Y.) (noting that "[o]ne need not be pregnant at the time of termination to be a member of the PDA's protected class."). Thus, one of the primary issues presented in a case such as this becomes where to draw that line. Solomen, 183 F. Supp. 2d at 753 (noting that if the employee is not pregnant at the time of the adverse employment action, her membership in the protected class may be "less than clear.").

For this reason, a number of courts have adopted a requirement that the adverse employment action occur "at or around" the time of the pregnancy in order for the plaintiff to be considered part of the protected class. Brinkman v .State Dep't of Corr., 863 F. Supp. 1479, 1486 (D. Kan. 1994) (excluding plaintiff from protected class based on a one year temporal gap, but noting that inclusion required "she otherwise belonged to the protected group at or near the time of separation from her employment."). Other courts, yet, have examined the circumstances on an almost case by case basis, carefully gauging the temporal proximity to determine whether the gap is too attenuated to allow a discriminatory inference. Miles, 429 F.3d at 490 (finding that a one year gap between termination was not impossible to overcome based on the fact that plaintiff's supervisor had attempted, but failed to terminate the employee while she was still pregnant); Briggs, 819 F. Supp. 2d at 127 (including plaintiff within the protected class when the termination occurred three months after the birth of her child); Helmes v. South Colonie Centr. Sch. Dist., 564 F. Supp. 2d 137, 147 (N.D.N.Y. 2008) (finding that a nine-week gap between return from maternity leave and adverse employment action still afforded plaintiff PDA coverage.); Solomen, 183 F. Supp. 2d at 754 (finding that an eleven month lapse between end of pregnancy and termination removed plaintiff from PDA coverage); Fejes v. Gilpin Ventures,

Inc., 960 F. Supp. 1487, 1493 (D. Col. 1997) (including plaintiff within the protected class when termination occurred less than three months after the conclusion of the pregnancy).

Illustratively, in Gerdin v. CEVA Freight, another Fifth Circuit district court considered whether an employee who was terminated after returning from maternity leave could still be considered member of the protected class of pregnant women. 908 F. Supp. 2d 821, 827 (S.D. Tex. 2012). There, the employee's job duties had been delegated to two non-pregnant employees during her initial leave, but the plaintiff had been terminated altogether approximately ten weeks after giving birth and approximately three weeks after returning from maternity leave. Id. The court concluded that such facts were sufficient to satisfy the requirement that plaintiff be a member of the protected class. Id.

In the case at hand, Walker gave birth to her child August 17, 2010. She returned to work on November 5, 2010, and was thereafter removed from her assistant manager position on December 24, 2010. Thus, the adverse employment action occurred approximately four months following the end of her pregnancy, and a little more than one month after returning from her pregnancy leave. The Court finds that the temporal proximity between the end of her pregnancy and the adverse employment action is sufficient to provide Plaintiff inclusion under the PDA.

Defendant additionally contends, however, that Walker cannot establish the fourth element of a prima facie case. Specifically, Wal-Mart argues that Plaintiff has produced insufficient evidence regarding whether she was replaced with a non-pregnant employee. In her deposition, however, Walker testified that she was replaced by Brandon Jenkins and Delisa Goins. Further, Barnett's sworn affidavit also establishes that Brandon Jenkins and Delisa Goins were placed in assistant manager positions in the Starkville, Mississippi store following Walker's

removal. The burden for establishing a prima facie case of discrimination is not onerous, and the Court finds that Walker has done so here in regard to the contested elements of her prima facie showing. After all, to establish a prima facie case, a plaintiff need only make a very minimal showing. Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996) (quoting Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 639 (5th Cir. 1985)).

Thus, the burden then shifts to Wal-Mart to articulate a legitimate, nondiscriminatory reason for removing Walker from her assistant manager position. Notably, that burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" Alvarado, 492 F.3d at 611. In response, Wal-Mart argues that Walker was removed from her position because she took leave in excess of her twelve weeks of protected FMLA leave. Wal-Mart contends that an employee's position cannot be guaranteed beyond the twelve weeks of protected leave and that, as a matter of general practice, it routinely removes employees from their positions when they exhaust leave in excess of the twelve weeks. The Court finds that Wal-Mart has successfully provided a legitimate, nondiscriminatory reason for the alleged adverse employment action and the burden therefore shifts back to Walker.

As to Walker's pretext theory, she argues that King's statement that he would have to "get rid" of her is evidence that Wal-Mart's proffered legitimate, nondiscriminatory reason is unworthy of credence. At this stage, the plaintiff must present substantial evidence showing that the employer's proffered reason is pretext for discrimination. Laxton, 333 F.3d at 578. In other words, the "plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002). The Court finds that there is a genuine dispute of material fact as

15

to Walker's pretext theory. Despite Wal-Mart's attempt to portray King as having no involvement in personnel decisions regarding assistant managers, the facts before the Court simply do not support such a contention at the current juncture. For instance, in regard to Walker's initial August personal leave request, King testified that he told her, "I can't allow you to because I haven't allowed anybody else in the building, so you can get with Pam." Further, King testified that although Barnett managed the logistics of allowing leave for assistant managers, it was he who ultimately signed off. Additionally, Barnett clearly testified that she often attempted to work with the store manager to re-negotiate scheduling for assistant managers, but that King at least sometimes initially scheduled the assistant managers. Defendant's motion for summary judgment as to Plaintiff's PDA claim is therefore denied.

   C. Title VII Race Discrimination

Plaintiff concedes that summary judgment is due to be granted as to her Title VII race discrimination claim, and it is therefore dismissed.

CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [39] is granted in part and denied in part. Summary judgment is granted in favor of Defendant as to Plaintiff's ADA association claim and Plaintiff's Title VII race discrimination claim, but is denied as to Plaintiff's Title VII PDA claim.

SO ORDERED, this the 31st day of July, 2013.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**